

02/11/2011

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| BILLIE M. FEUERBACHER, | § | CASE NO. 09-43180 |
| | § | (Chapter 7) |
| Debtors. | § | |
| _____ | § | |
| | § | |
| CHRISTOPHER J. MOSER, TRUSTEE, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | ADV. NO. 09-04198 |
| | § | |
| ALAN LANE FEUERBACHER | § | |
| Defendant. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Plaintiff brought this adversary proceeding to avoid and recover the value of two tracts of real estate that Billie M. Feuerbacher (the "Debtor") transferred to her husband, Alan Lane Feuerbacher (the "Defendant"). On February 10, 2011, the Court held a non-jury trial. After considering all of the evidence admitted and the arguments of counsel, the Court makes the following findings of fact and conclusions of law. *See* FED. R. BANKR. P. 7052. In the event any finding of fact can be construed as a conclusion of law, it shall be so treated. Likewise, in the event any conclusion of law can be construed as a finding of fact, it shall be so treated.

## I. FINDINGS OF FACT

*Relationship Between the Debtor and the Defendant*

1.    At all times relevant to this case, the Defendant has been the Debtor's non-filing spouse.

*The Homestead Property*

2.  At all times relevant to this case, the Debtor and the Defendant lived at 7012 Nicki Street, Dallas, Collin County, Texas 75252 (the "Homestead Property"). Both claim homestead exemption as allowed by state laws. The Debtor is not an obligor on the loan with the current or previous lender.

*The Mills County Property*

3.  The Debtor and the Defendant jointly acquired approximately 241 acres of non-homestead real property in Mills County, Texas (the "Mills County Property") by a Warranty Deed With Vendor's Lien dated May 3, 2001 and recorded in the real property records of Mills County, Texas on May 21, 2001.

4.  The Debtor and the Defendant both executed a Promissory Note dated May 11, 2001 in the original principal amount of $242,000.00 payable to the order of Capital Farm Credit, FLCA (the "Mills County Property Note"), which evidenced a loan that was used to purchase the Mills County Property.

5.  The Debtor and the Defendant both executed a Deed of Trust dated May 11, 2001 and recorded in the real property records of Mills County, Texas on May 21, 2001, which granted a lien on the Mills County Property to Capital Farm Credit to secure payment of the Mills County Property Note.

6.  The Debtor and the Defendant made the following payments to Capital Farm Credit on the Mills County Property Note from an account held jointly in the names of the Debtor and the Defendant:

    (a)   check dated December 1, 2003 in the amount of $14,298.76; and

    (b)   check dated November 26, 2008 in the amount of $17,993.53.

In addition, the Debtor made a payment to Capital Farm Credit on the Mills County Property Note from an account held solely in her name by check dated December 2, 2005 in the amount of $17,641.55.

*The Colorado Property*

7.  The Debtor and the Defendant jointly acquired a non-homestead house in Mineral County, Colorado (the "Colorado Property") by a Warranty Deed dated February 1, 2002 and recorded in the real property records of Mineral County, Colorado on February 13, 2002.

8.  The Debtor and the Defendant both executed a Note dated February 1, 2007 in the original principal amount of $375,000.00 payable to the order of EverHome Mortgage Company (the "Colorado Property Note"), which evidenced a loan that was used to refinance the Colorado Property.

9.  The Debtor and the Defendant both executed a Deed of Trust dated February 1, 2007 and recorded in the real property records of Mineral County, Colorado on February 27, 2007, which granted a lien on the Colorado Property to EverHome Mortgage Company to secure payment of the Colorado Property Note.

10. EverHome Mortgage Company assigned the Colorado Property Note and the Deed of Trust granting a lien on the Colorado Property to Wells Fargo Home Mortgage sometime between July 2007 and June 2008.

11. The Debtor and The Defendant made eighteen payments totaling over $40,000.00 to EverHome Mortgage Company or Wells Fargo from 2007 through 2009 on the Colorado Property Note from an account held jointly in the names of the Debtor and the Defendant.

*Pre-petition Lawsuits Against the Debtor*

12. T.S. Printing filed a lawsuit against the Debtor on August 12, 2005 in the Dallas County Court at Law No. 5. That lawsuit remained pending against the Debtor through and including the date of her bankruptcy filing.

13. David Allen Guerra filed a lawsuit against the Debtor on November 26, 2008 in the 40th Judicial District Court of Ellis County, Texas. That lawsuit remained pending against the Debtor through and including the date of her bankruptcy filing.

14. Valuable Investments LLC filed a lawsuit against the Debtor on October 27, 2008 in the 40th Judicial District Court of Ellis County, Texas. That lawsuit remained pending against the Debtor through and including the date of her bankruptcy filing.

15. TBW Land & Cattle, LLC obtained a judgment against the Debtor for over $4.2 million on May 6, 2009 in the 40th Judicial District Court of Ellis County, Texas. That judgment remained in effect against the Debtor through and including the date of her bankruptcy filing.

*The Defendant's Transfers of the Mills County Property and the Colorado Property to the Defendant*

16. On July 19, 2003, the Debtor executed a Release and Conveyance of Properties of Billie Morse Feuerbacher (the "Debtor Release and Conveyance"), which stated that she revoked all claim to the Mills County Property and the Colorado Property and gifted and conferred any and all of her community property interest in the Mills County Property and Colorado Property to the Defendant. The Debtor Release and Conveyance also stated that the Mills County Property and Colorado Property would be the Defendant's separate property and that the Homestead Property would be the Debtor's separate property.

17. Also on July 19, 2003, the Defendant executed a Release and Conveyance of Properties of Alan Lane Feuerbacher (the "Defendant Release and Conveyance"), which stated

that he revoked all claim to the Homestead Property and gifted and conferred any and all community property interest in the Homestead Property to the Debtor. The Defendant Release and Conveyance also stated that the Homestead Property would be the Debtor's separate property and that the Mills County Property and Colorado Property would be the Defendant's separate property.

18. The Debtor Release and Conveyance was recorded for the first time in Mills County, Texas on September 16, 2009.

19. On September 16, 2009, the fair market value of the Mills County Property was $590,000.00. On that same date, the balance owed on the Mills County Property Note secured by the Mills County Property was $222,306.60. Therefore, the equity value of the Mills County Property on that date was $367,693.40.

20. The Debtor executed a Quit Claim Deed dated September 23, 2009 and recorded it in Mineral County, Colorado, on that same date. In the Quit Claim Deed, the Debtor conveyed the Colorado Property to the Defendant.

21. On September 23, 2009, the fair market value of the Colorado Property was $438,000.00. On that same date, the balance owed on the Colorado Property Note secured by the Colorado Property was $363,163.69. Therefore, the equity value of the Colorado Property on that date was $74,836.31.

22. On September 16 and 23, 2009, the fair market value of the Homestead Property was approximately $325,582.00. On those same dates, the balance of the mortgage loan secured by a lien on the Homestead Property was approximately $323,840.88. Therefore, the equity value of the Homestead Property on those dates was approximately $1,741.12.

*Chapter 7 Bankruptcy Filing by the Debtor*

23. The Debtor filed her chapter 7 bankruptcy case in this Court on October 6, 2009 (the "Petition Date"). The Court appointed the Plaintiff as the chapter 7 trustee, and he continues to serve in that capacity.

*The Debtor's Liabilities Exceeded Her Assets at All Times from July 9, 2009 through and Including October 6, 2009.*

24. The Debtor had less than $420,000.00 worth of assets (excluding the Mills County Property and the Colorado Property) at all times during the ninety days leading up to and including the Petition Date.[1] The Debtor swore under oath in her bankruptcy schedules that she held assets having a total value of $366,305.00 on the Petition Date. The Debtor swore under oath in her bankruptcy statement of financial affairs that her transfers during the ninety days preceding the Petition Date totaled less than $50,000.00.

25. The Debtor had liabilities exceeding $4.2 million at all times during the ninety days leading up to and including the Petition Date. The Debtor swore under oath that she owed an undisputed debt of $4,241,438.01 to TBW Land & Cattle LLC on the Petition Date based on a judgment against her. That judgment was rendered against the Debtor on May 6, 2009.

26. The Debtor's liabilities were more than ten times the value of her assets at all times during the ninety days leading up to and including the Petition Date (*i.e.*, from July 8, 2009 through October 6, 2009), excluding the Mills County Property and the Colorado Property. Even including the Mills County Property and the Colorado Property, the Debtor's liabilities still grossly exceeded the value of her assets during that time period.

---

[1] The Debtor's assets exceeded her liabilities even if the Mills County Property and Colorado Property are included.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW - PAGE 6**

## II. CONCLUSIONS OF LAW

*The Debtor "Transferred" the Mills County Property and the Colorado Property to the Defendant When the Conveyance Documents were Recorded in the County Property Records*

27.     Under § 548 of the Bankruptcy Code, a "transfer" occurs for purposes of a fraudulent transfer when a bona fide purchaser for value cannot acquire an interest in the property transferred that would be superior to the transferee. 11 U.S.C. § 548(d)(1). The same standard applies under the Texas Uniform Fraudulent Transfer Act,[2] except that the Texas statute uses the term "good faith purchaser" rather than "bona fide purchaser." TEX. BUS. & COM. CODE § 24.007(1)(A); *U.S. v. Commercial Tech., Inc.*, 354 F.3d 378, 386 (5th Cir. 2003).

28.     Under both Texas and Colorado law, a "transfer" of real property cannot occur until the conveyance document is recorded in the property records of the county where the property is located. *See* TEX PROP. CODE § 13.001(a) (an unrecorded conveyance is void as to a subsequent purchaser for valuable consideration without notice); COLO. REV. STAT. ANN. § 38-35-109 (same); TEX. FAM. CODE § 4.106(b) (a partition agreement for real property is constructive notice to a good faith purchaser for value only if the instrument is acknowledged and recorded in the county where the real property is located).

29.     Nothing was filed in the Mills County, Texas, property records to convey the Debtor's interest in the Mills County Property to the Defendant until September 16, 2009. The Debtor's transfer of the Mills County Property to the Defendant took place on that date for purposes of § 548 of the Bankruptcy Code and the Texas Uniform Fraudulent Transfer Act.

30.     Nothing was filed in the Mineral County, Colorado property records to convey the Debtor's interest in the Colorado Property until September 23, 2009. The Debtor's transfer of the Colorado Property to the Defendant took place on that date for purposes of § 548 of the Bankruptcy Code and the Texas Uniform Fraudulent Transfer Act.

---

[2] TEX. BUS. & COM. CODE § 24.001, *et seq.*

***The Debtor had a Joint Community Property Interest in the Mills County Property and the Colorado Property at the Time of the Transfers.***

31.  The Debtor had a community property interest in the Mills County Property and the Colorado Property at the time she transferred them to the Defendant on September 16, 2009 and September 23, 2009, respectively.

32.  First, property possessed by either spouse during marriage is presumed to be community property. TEX. FAM. CODE § 3.003(a). Under Texas law, the degree of proof necessary to rebut the presumption of community property is "clear and convincing." *Id.* § 3003(b). The Defendant did not rebut that presumption in this case.

33.  Second, property titled in the name of both spouses cannot be separately managed by one spouse, because one spouse cannot convey title without the other. *Owen v. Porter*, 796 S.W.2d 265, 268 (Tex. App.—San Antonio 1990, no pet.). The Mills County Property was titled jointly in the names of the Debtor and the Defendant until the Debtor conveyed it to the Defendant on September 16, 2009. The Colorado Property was titled jointly in the names of the Debtor and the Defendant until the Debtor conveyed it to the Defendant on September 23, 2009.

34.  Third, property acquired with proceeds of a loan on which both spouses are liable cannot be separately managed community property. *Cockerham v. Cockerham*, 527 S.W.2d 162, 170 (Tex. 1975). The Debtor and the Defendant were both liable on the promissory notes and deeds of trust evidencing the mortgage loans on both the Mills County Property and the Colorado Property.

35.  Fourth, the funds held in a joint account of husband and wife are community property. Such funds cannot be separately managed community property of one of the spouses. *Brooks v. Sherry Lane Nat'l Bank*, 788 S.W.2d 874, 877 (Tex. App.—Dallas 1990, no pet.) Here, before the Debtor transferred the Mills County Property and the Colorado Property to the

Defendant, the Debtor and the Defendant made numerous payments from their joint accounts totaling over $70,000.00 toward the mortgage loans on those properties. Those payments from jointly managed community property funds further support the conclusion that neither of the properties was the Defendant's separately managed community property before the transfers.

36.     The Court, therefore, concludes that the Mills County Property and the Colorado Property were jointly managed community property.

### *The Trustee Can Pursue Avoidance of the Transfers Under the Texas Uniform Fraudulent Transfer Act.*

37.     The Plaintiff may pursue avoidance of the Debtor's transfers of the Mineral County Property and the Colorado Property under the Texas Uniform Fraudulent Transfer Act if a creditor holding an unsecured claim that is allowable against the Debtor's bankruptcy estate could pursue avoidance under that Act. 11 U.S.C. § 544(b)(1). As explained above, TBW Land & Cattle, LLC held a judgment against the Debtor for over $4.2 million before the transfers and on the Petition Date. TBW could have pursued avoidance of the transfers under the Texas Fraudulent Transfer Act. TEX. BUS. & COM. CODE §§ 24.005(a)(1) and 24.006(a). Therefore, the Trustee can also pursue avoidance of those transfers under the Texas Fraudulent Transfer Act. 11 U.S.C. § 544(b)(1).

### *The Transfers are Avoidable as Constructively Fraudulent Under the Bankruptcy Code and the Texas Uniform Fraudulent Transfer Act*

38.     Under both the Bankruptcy Code and the Texas Fraudulent Transfer Act, the Plaintiff may avoid the Debtor's transfers the Mills County Property and the Colorado Property to the Defendant if the Debtor received less than reasonably equivalent value in exchange for the transfers and was insolvent at the time of the transfers. 11 U.S.C. § 548(a)(1)(B); TEX. BUS. & COM. CODE § 24.006(a).

39. The Debtor was insolvent at the time of the transfers. As explained above, the Debtor's transfers of the Mills County Property and the Colorado Property occurred on September 16, 2009 and September 23, 2009, respectively. Also as explained above, the Debtor's liabilities far exceeded her assets at all times from July 9, 2009 through and including October 6, 2009. Therefore, the Debtor was "insolvent" within the meaning of the Bankruptcy Code and the Texas Fraudulent Transfer Act during that entire time period. 11 U.S.C. § 101(32)(A); TEX. BUS. & COM. CODE § 24.003(a).

40. The Debtor received far less than reasonably equivalent value in exchange for the transfers. At the time of the transfers in September 2009, the Mills County Property had a fair market value that was $367,693.40 higher than the mortgage owed, the Colorado Property had a fair market value that was $74,836.31 higher than the mortgage owed, and the Homestead Property had a fair market value that was only about $1,741.12 higher than the mortgage owed. Thus, the Debtor transferred away property having equity of more than $400,000 and received property having equity of less than $2,000.

41. The Debtor's transfers of the Mills County Property and the Colorado Property to the Defendant are avoidable as constructively fraudulent transfers under the Bankruptcy Code and the Texas Uniform Fraudulent Transfer Act.

***The Transfers are Avoidable Because the Debtor Made them with the Intent to Hinder, Delay, or Defraud Creditors.***

42. Under both the Bankruptcy Code and the Texas Fraudulent Transfer Act, the Plaintiff may avoid the Debtor's transfers of her interests in the Mills County Property and the Colorado Property to the Defendant if the Debtor made the transfers with the actual intent to hinder, delay, or defraud any of her creditors. 11 U.S.C. § 548(a)(1)(A); TEX. BUS. & COM. CODE § 24.005(a)(1).

43. The phrase "hinder, delay, or defraud" in section 548(a)(1)(A) of the Bankruptcy Code is written disjunctively, so a plaintiff can avoid the transfer if the debtor is found to have intended any one of the three. *Bayou Accredited Fund, LLC. v. Redwood Growth Partners, L.P. (In re Bayou Group, LLC)*, 396 B.R. 810, 826 (Bankr. S.D.N.Y. 2008). The Texas Uniform Fraudulent Transfer Act uses that same disjunctive phrase of "hinder, delay, or defraud." TEX. BUS. & COM. CODE § 24.005(a)(1).

44. "Since direct proof of fraud often is not available, courts may rely on circumstantial evidence to establish the fraudulent intent." *Roland v. U.S.*, 838 F.2d 1400, 1402-03 (5th Cir.1988). The Fifth Circuit identified the following "badges of fraud" that tend to show intent to hinder, delay, or defraud under section 548(a)(1)(A) of the Bankruptcy Code:

    (a)    the lack or inadequacy of consideration;

    (b)    the family, friendship or close associate relationship between the parties;

    (c)    the retention of possession, benefit or use of the property in question;

    (d)    the financial condition of the party sought to be charged both before and after the transaction in question;

    (e)    the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and

    (f)    the general chronology of events and transactions under inquiry.

*Soza v. Hill (In re Soza)*, 542 F.3d 1060, 1067 (5th Cir. 2008).

45. The Texas Uniform Fraudulent Transfer Act includes the following non-exclusive list of "badges of fraud" to evaluate a transferor's intent to hinder, delay, or defraud:

    (a)    the transfer or obligation was to an insider;

(b) the debtor retained possession or control of the property transferred after the transfer;

(c) the transfer or obligation was concealed;

(d) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(e) the transfer was of substantially all the debtor's assets;

(f) the debtor absconded;

(g) the debtor removed or concealed assets;

(h) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(i) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(j) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(k) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

TEX. BUS. & COM. CODE § 24.005(b)

46. Not all, or even a majority, of the "badges of fraud" must exist to find actual intent to hinder, delay, or defraud. "When several of these indicia of fraud are found, they can be a proper basis for an inference of fraud." *Roland*, 838 F.2d at 1403.

47. The Debtor's transfers of the Mills County Property and the Colorado Property to the Defendant are tainted by several clear indicia of fraud in this case:

(a) The Debtor and Defendant held themselves out to the world as joint owners of their Homestead Property, the Mills County Property, and the Colorado Property by jointly holding the title, making payments from their joint bank account, and refinancing the properties together. In addition, the Defendant continued to live in the Homestead Property with the Debtor, his wife, after executing the Release and Conveyance Agreement relating to his interest in the Homestead Property.

(b) The Debtor and the Defendant hid the Release and Conveyance Agreements from their creditors by delaying their filing until the eve of bankruptcy.

(c) The Debtor made the transfers of her interest in the Mills County Property and the Colorado Property on September 16, 2009 and September 23, 2009 -- both less than three weeks before the Petition Date.

(d) At the time of the transfers, the state court had entered a judgment against the Debtor for over $4.2 million, and three other lawsuits remained pending against her.

(e) The Debtor was grossly insolvent at the time of the transfers.

(f) The Debtor made the transfers to her husband, an insider. 11 U.S.C. § 101(31)(A)(1); TEX. BUS. & COM. CODE § 24.002(7)(A)(i).

(g) The Debtor received grossly inadequate consideration for the transfers.

(h) The transfers left the Debtor with no non-exempt assets except, possibly, a small sum that she completely exhausted in the weeks between the time of the transfers and her bankruptcy filing. According to the Debtor's sworn bankruptcy schedules, all of the assets she had on the Petition Date were

**FINDINGS OF FACT AND CONCLUSIONS OF LAW - PAGE 13**

exempt and she had no funds at all on the Petition Date. According to her sworn statement of financial affairs, she did not transfer any other property during the ninety days immediately preceding the Petition Date other than paying ordinary living expenses.

48. Under both the Fifth Circuit's factors outlined in *Soza* and the badges of fraud listed in the Texas Uniform Fraudulent Transfer Act, the Court concludes that the Debtor made the transfers of the Mills County Property and the Colorado Property with the actual intent to hinder, delay, or defraud one or more of her creditors.

*The Trustee is Entitled to an Award of Attorneys' Fees and Expenses Against the Defendant.*

49. This Court may award the Plaintiff his reasonable attorneys' fees and expenses against the Defendant under the Texas Uniform Fraudulent Transfer Act. TEX. BUS. & COM. CODE § 24.013. Due to the immediate familial relationship between the Debtor and the Defendant and the other indicia of actual intent to hinder, delay, or defraud outlined above, the Court concludes that an award of attorneys' fees and expenses to the Plaintiff is appropriate in this case. The parties have agreed to present the issue of attorneys' fees and expenses by separate motion, response, and affidavits of counsel on a schedule to be set by the Court.

### III. CONCLUSION AND ORDERS

For all of the foregoing reasons, the Court concludes that the Plaintiff has established grounds for the entry of a judgment against the Defendant for (a) avoidance and recovery of the Mills County Property and the Colorado Property under § 548(a)(1)(B) of the Bankruptcy Code and § 24.006(a) of the Texas Uniform Fraudulent Transfer Act and (b) all of the Plaintiff's reasonable attorneys' fees and expenses under § 24.013 of the Texas Uniform Fraudulent Act. With respect to the Plaintiff's request for attorneys' fees, the Plaintiff has **fourteen (14) days** from the entry of these findings of fact and conclusions of law to submit a motion and affidavits

of counsel on the amount and reasonableness of the requested fees and expenses. The Defendant shall file his objections to the Plaintiff's request for attorneys' fees, if any, within **seven (7) days** of the Plaintiff's motion.

    **SO ORDERED.**

Signed on 2/11/2011

*Brenda T. Rhoades*  SR
HONORABLE BRENDA T. RHOADES,
CHIEF UNITED STATES BANKRUPTCY JUDGE